## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| F2VS TECHNOLOGIES, LLC, | CIVIL ACTION NO. _____ |
| Plaintiff, | **JURY TRIAL DEMANDED** |
| v. | |
| VIGILENT CORPORATION, | |
| Defendant. | |

### PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff F2VS Technologies, LLC (hereinafter, "Plaintiff" or "F2VS"), by and through its undersigned counsel, files this Complaint for Patent Infringement against Defendant Vigilent Corporation (hereinafter, "Defendant" or "Vigilent") as follows:

### NATURE OF THE ACTION

1.    This is a patent infringement action to stop Defendant's infringement of Plaintiff's United States Patent Nos. 7,379,981 (hereinafter, the "'981 Patent"), 8,700,749 (hereinafter, the "'749 Patent"), and 8,855,019 (hereinafter, the "'019 Patent") (collectively, the "Patents-in-Suit"), copies of which are attached hereto as **Exhibits A, B and C,** respectively. Plaintiff is the owner of the Patents-in-Suit.   Plaintiff seeks injunctive relief and monetary damages.

### PARTIES

2.    F2VS is a limited liability company organized and existing under the laws of the State of Delaware and maintains its principal place of business at 375 Park Avenue, Suite 2607, New York, New York, 10152 (New York County).

3.     Based upon public information, Defendant Vigilent is a corporation duly organized and existing under the laws of the state of Delaware since July 14, 2008.

4.     Based upon public information, Defendant Vigilent has its principal place of business located at 1111 Broadway, 3rd Floor, Oakland, California 94607 (Alameda County).

5.     Defendant may be served through its registered agent, National Registered Agents, Inc., 160 Greentree Drive, Suite 101, Dover, Delaware 19904 (Kent County).

6.     Based upon public information, Defendant ships, distributes, makes, uses, offers for sale, sells, and/or advertises its products using Vigilent's Wireless Mesh System, which is integrated into its Dynamic Cooling Management systems (http://www.vigilent.com/products-and-services/dynamic-control/;     http://www.vigilent.com/products-and-services/monitoring/), including its Wireless Sensors, Network Gateway, AI Engine, and AHU Control Kit (hereinafter the Accused Products and Services).   These components are shown below:



## Wireless Sensors

Wireless sensors are used to collect return and discharge temperature readings every minute, and are placed at strategic locations throughout a facility to measure input and output temperatures. Typically they are applied using fasteners, and can be stuck on walls, racks or devices. When used in a data center, two remote thermistors are connected to each sensor – one to capture temperature at rack bottom, the other at rack top. For administrative buildings, a wall mount version of the sensor includes an integrated thermistor.

Sensors are available to monitor a variety of environmental conditions. Temperature sensors, either rack or wall mount, are the most common. Humidity, air pressure, and power sensors are also available to monitor additional aspects of the environment.

The sensors are based on advanced mesh networking technology, which allows each node to be both a source and repeater for other nodes, allowing the network to automatically self-configure and be resilient to intermittent outages or changes in site layout.



## Network Gateway

Data from the wireless sensors is distributed over the mesh network, and aggregated by one or more gateways. A gateway can typically accommodate 150-200 sensors, subject to the layout of the facility. Each gateway is then wired with Ethernet to the same network as the AI Engine, to which it delivers data and from which it receives commands.



## AI Engine

The AI Engine is the brain of the Vigilent system. This appliance runs the algorithms that analyze the real-time data against current and historic trends to optimize the system to achieve the best temperature results with the least amount of energy. It then sends those control decisions back out to the network gateway, which delivers them to the Wireless AHU Control Kits.



## AHU Control Kit

As directed by the AI Engine, the control kit can turn machines on or off, or adjust fan speeds, to ensure the perfect facility temperature using the smallest amount of energy. As those changes are implemented, the temperature sensors gather new temperature data, and the cycle continues again.

**Exhibit D, pp. 2-3.**

## JURISDICTION AND VENUE

7.     This action arises under the Patent Laws of the United States, 35 U.S.C. § 1 *et seq.*, including 35 U.S.C. §§ 271, 281, 283, 284, and 285.   This Court has subject matter jurisdiction over this case for patent infringement under 28 U.S.C. §§ 1331 and 1338(a).

8.     The Court has personal jurisdiction over Vigilent because: Vigilent has minimum contacts within the State of Delaware and in the District of Delaware; Vigilent has purposefully availed itself of the privileges of conducting business in the State of Delaware and in the District of Delaware; Vigilent has sought protection and benefit from the laws of the State of Delaware and is incorporated there; Vigilent regularly conducts business within the State of Delaware and within the District of Delaware, and Plaintiff's causes of action arise directly from Vigilent's business contacts and other activities in the State of Delaware and in the District of Delaware.

9.     More specifically, Vigilent, directly and/or through its intermediaries, ships, distributes, makes, uses, imports, offers for sale, sells, and/or advertises its products and affiliated services in the United States, the State of Delaware, and the District of Delaware. Based upon public information, Vigilent has committed patent infringement in the State of Delaware and in the District of Delaware.  Vigilent solicits customers in the State of Delaware and in the District of Delaware.  Vigilent has many paying customers who are residents of the State of Delaware and the District of Delaware and who use Vigilent's products in the State of Delaware and in the District of Delaware.  Vigilent is also incorporated in the State of Delaware and in the District of Delaware.

10.     Venue is proper pursuant to 28 U.S.C. §1400(b) because Vigilent resides in the District of Delaware because of its formation under the laws of Delaware.

11.     Venue is proper pursuant to 28 U.S.C. § 1391(b) and (c) because Vigilent resides in the District of Delaware because of its formation under the laws of Delaware, which subjects

it to the personal jurisdiction of this Court.

## BACKGROUND INFORMATION

12.     The Patents-in-Suit were duly and legally issued by the United States Patent and Trademark Office on May 27, 2008 (the '981 Patent), April 15, 2014 (the '749 Patent), and October 7, 2014 (the '019 Patent) after full and fair examinations.  *See* **Exs. A, B and C**, respectively.  Plaintiff is the owner of the Patents-in-Suit, and possesses all right, title and interest in the Patents-in-Suit including the right to enforce the Patents-in-Suit, the right to license the Patents-in-Suit, and the right to sue Vigilent for infringement and recover past damages.

13.     Based upon public information, Vigilent owns, operates, advertises, and/or controls the website http://www.vigilent.com/ through which Vigilent advertises, sells, offers to sell, provides and/or educates customers about its products and services that incorporates its Vigilent's Wireless Mesh System technology, including but not limited to the following products from Vigilent: Wireless Sensors, Network Gateway, AI Engine, and AHU Control Kit, each of which are controlled/managed by Vigilent's platform software package. *See* **Exhibits D - F**.

## COUNT I
## INFRINGEMENT OF U.S. PATENT NO. 7,379,981

14.     Plaintiff re-alleges and incorporates by reference each of paragraphs 1-13 above.

15.     Plaintiff is informed and believes that Vigilent has infringed and continues to infringe the '981 Patent, either literally or under the doctrine of equivalents, through the manufacture and sale of infringing products under Vigilent's brand, as incorporated into the products identified above. Based upon public information, Vigilent has infringed and continues to infringe one or more claims of the '981 Patent, including Claim 1, because it ships distributes, makes, uses, imports, offers for sale, sells, and/or advertises devices that form a self-configuring

wireless network.  The Vigilent System "incorporates industrial-grade, wireless mesh technology to deliver a network that is easy to install, requires little to no oversight, and resist failure." **Ex. F**, p. 1.  "The mesh network is self-configuring and self-healing – individual sensors will find the most efficient path to a gateway.  If a connection becomes unavailable, the network will automatically find a new path around unreachable points, and re-establish communications to the gateway." **Ex. F**, p. 3.

16.     The self-configuring wireless network includes a network cluster comprising multiple networks (each comprising a combination of virtual nodes (Vigilent Wireless Sensors and Network Gateways and/or AHU Control Units)).  A pictorial example is included below:



**Ex. F**, p. 1. Each of the networks within the network cluster incorporate a group of virtual nodes (Vigilent Wireless Sensors and Network Gateways and/or AHU Control Units) coupled to a virtual gate (Vigilent Network Gateway and/or Vigilent AI Engine) to provide a communication

access point between the virtual nodes and an external network (Internet or cellular network via text for alerts) and through which communications are facilitated through a virtual network operations entity (*via* the Vigilent AI Engine).  A pictorial example is shown below:



17.     Based upon public information, Vigilent has intentionally induced and continues to induce infringement of one or more claims of the '981 Patent in this district and elsewhere in the United States, by its intentional acts which have successfully, among other things, encouraged, instructed, enabled, and otherwise caused Vigilent's customers to use the Accused Products and Services in an infringing manner.  To the extent that Vigilent is not the only direct infringer of the '981 Patent, it instructs its customers on how to infringe the '981 Patent through its support and sales to them, including their government and commercial clients.  *See* **Ex. G** (List of Vigilent customers employing its Dynamic Cooling Management system).

18.     Despite knowledge of the '981 Patent as early as the date of service of the

Original Complaint in this action, Vigilent, based upon public information, continues to encourage, instruct, enable, and otherwise cause its customers to use its products and services, in a manner which infringes the '981 Patent.  Based upon public information, the provision of and sale of the Accused Products and Services is a source of revenue and a business focus of Vigilent.

19.     Based upon public information, Vigilent specifically intends its customers to use its products and services in such a way that infringes the '981 Patent by, at a minimum, providing and supporting the Accused Products and Services and instructing its customers on how to use them in an infringing manner, at least through information available on Vigilent's website including information brochures, promotional material, and contact information.  *See* **Ex. G** (List of Vigilent customers employing its Dynamic Cooling Management system); *see also* **Exs. D through F.**

20.     Specifically, Vigilent offers design services to select, deploy and integrate Vigilent's products to assist its customers in establishing and using mesh systems.  *See e.g.* **Exs. D through F**.  Based upon public information, Vigilent knew that its actions, including, but not limited to any of the aforementioned products and services, would induce, have induced, and will continue to induce infringement by its customers by continuing to sell, support, and instruct its customers on using the Accused Products and Services.

21.     Vigilent's aforesaid activities have been without authority and/or license from Plaintiff.

22.     Plaintiff is entitled to recover from Vigilent the damages sustained by Plaintiff as a result of Vigilent's wrongful acts in an amount subject to proof at trial, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35

U.S.C. § 284.

23.      Vigilent's infringement of Plaintiff's rights under the '981 Patent will continue to damage Plaintiff, causing irreparable harm to Plaintiff for which there is no adequate remedy at law, unless enjoined by this Court.

## COUNT II
## INFRINGEMENT OF U.S. PATENT NO. 8,700,749

24.      Plaintiff re-alleges and incorporates by reference each of paragraphs 1-13 above.

25.      Plaintiff is informed and believes that Vigilent has infringed and continues to infringe the '749 Patent, either literally or under the doctrine of equivalents, through the manufacture and sale of infringing products under Vigilent's brand, as incorporated into the products identified above.  Based upon public information, Vigilent has infringed and continues to infringe one or more claims of the '749 Patent, including Claim 1, because it ships distributes, makes, uses, imports, offers for sale, sells, and/or advertises devices that form a self-configuring wireless network. The Vigilent System "incorporates industrial-grade, wireless mesh technology to deliver a network that is easy to install, requires little to no oversight, and resist failure." **Ex. F**, p. 1.  "The mesh network is self-configuring and self-healing – individual sensors will find the most efficient path to a gateway.   If a connection becomes unavailable, the network will automatically find a new path around unreachable points, and re-establish communications to the gateway." **Ex. F**, p. 3.

26.      The self-configuring wireless network includes a group of virtual network nodes (Vigilent Wireless Sensors and Network Gateways and/or AHU Control Units) coupled to a gateway (Vigilent Network Gateway and/or Vigilent AI Engine).



**Ex. F**, p. 1. The gateway provides a communication access point between the virtual network nodes and an external network (internet or cellulate network via text alerts) to control and monitor the nodes (*via* the Vigilent AI Engine, and AHU Control Kit).  A pictorial example is shown below:



27.     Based upon public information, Vigilent has intentionally induced and continues to induce infringement of one or more claims of the '749 Patent in this district and elsewhere in the United States, by its intentional acts which have successfully, among other things, encouraged, instructed, enabled, and otherwise caused Vigilent's customers to use the Accused Products and Services in an infringing manner.  To the extent that Vigilent is not the only direct infringer of the '749 Patent, it instructs its customers on how to infringe the '749 Patent through its support and sales to them, including their government and commercial clients.  *See* **Ex. G** (List of Vigilent customers employing its Dynamic Cooling Management system).

28.     Despite knowledge of the '749 Patent as early as the date of service of the

Original Complaint in this action, Vigilent, based upon public information, continues to encourage, instruct, enable, and otherwise cause its customers to use its products and services, in a manner which infringes the '749 Patent.  Based upon public information, the provision of and sale of the Accused Products and Services is a source of revenue and a business focus of Vigilent.

29.    Based upon public information, Vigilent specifically intends its customers to use its products and services in such a way that infringes the '749 Patent by, at a minimum, providing and supporting the Accused Products and Services and instructing its customers on how to use them in an infringing manner, at least through information available on Vigilent's website including information brochures, promotional material, and contact information.  *See* **Ex. G** (List of Vigilent customers employing its Dynamic Cooling Management system); *see also* **Exs. D through F.**

30.    Specifically, Vigilent offers design services to select, deploy and integrate Vigilent's products to assist its customers in establishing and using mesh systems.  *See e.g.* **Exs. D through F**.  Based upon public information, Vigilent knew that its actions, including, but not limited to any of the aforementioned products and services, would induce, have induced, and will continue to induce infringement by its customers by continuing to sell, support, and instruct its customers on using the Accused Products and Services.

31.    Vigilent's aforesaid activities have been without authority and/or license from Plaintiff.

32.    Plaintiff is entitled to recover from Vigilent the damages sustained by Plaintiff as a result of Vigilent's wrongful acts in an amount subject to proof at trial, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35

U.S.C. § 284.

33.     Vigilent's infringement of Plaintiff's rights under the '749 Patent will continue to damage Plaintiff, causing irreparable harm to Plaintiff for which there is no adequate remedy at law, unless enjoined by this Court.

**COUNT III**
**INFRINGEMENT OF U.S. PATENT NO. 8,855,019**

34.     Plaintiff re-alleges and incorporates by reference each of paragraphs 1-13 above.

35.     Plaintiff is informed and believes that Vigilent has infringed and continues to infringe the '019 Patent, either literally or under the doctrine of equivalents, through the manufacture and sale of infringing products under Vigilent's brand, as incorporated into the products identified above.  Based upon public information, Vigilent has infringed and continues to infringe one or more claims of the '019 Patent, including Claim 1, because it ships distributes, makes, uses, imports, offers for sale, sells, and/or advertises devices that form a self-configuring wireless network. The Vigilent System "incorporates industrial-grade, wireless mesh technology to deliver a network that is easy to install, requires little to no oversight, and resist failure." **Ex. F**, p. 1.  "The mesh network is self-configuring and self-healing – individual sensors will find the most efficient path to a gateway.  If a connection becomes unavailable, the network will automatically find a new path around unreachable points, and re-establish communications to the gateway." **Ex. F**, p. 3.

36.     The self-configuring wireless network includes a group of wireless network nodes (Vigilent Wireless Sensors and Network Gateways and/or AHU Control Units) coupled to a gateway (Vigilent Network Gateway and/or Vigilent AI Engine).



**Ex. F**, p. 1. The gateway provides a communication access point between the wireless network nodes and an external network (internet or cellulate network via text alerts) to control and monitor the nodes (*via* the Vigilent AI Engine, and AHU Control Kit).  A pictorial example is shown below:

37.     Based upon public information, Vigilent has intentionally induced and continues to induce infringement of one or more claims of the '019 Patent in this district and elsewhere in the United States, by its intentional acts which have successfully, among other things, encouraged, instructed, enabled, and otherwise caused Vigilent's customers to use the Accused Products and Services in an infringing manner.  To the extent that Vigilent is not the only direct infringer of the '019 Patent, it instructs its customers on how to infringe the '019 Patent through its support and sales to them, including their government and commercial clients.  *See* **Ex. G** (List of Vigilent customers employing its Dynamic Cooling Management system).

38.     Despite knowledge of the '019 Patent as early as the date of service of the

Original Complaint in this action, Vigilent, based upon public information, continues to encourage, instruct, enable, and otherwise cause its customers to use its products and services, in a manner which infringes the '019 Patent.  Based upon public information, the provision of and sale of the Accused Products and Services is a source of revenue and a business focus of Vigilent.

39.     Based upon public information, Vigilent specifically intends its customers to use its products and services in such a way that infringes the '019 Patent by, at a minimum, providing and supporting the Accused Products and Services and instructing its customers on how to use them in an infringing manner, at least through information available on Vigilent's website including information brochures, promotional material, and contact information.  *See* **Ex. G** (List of Vigilent customers employing its Dynamic Cooling Management system); *see also* **Exs. D through F.**

40.     Specifically, Vigilent offers design services to select, deploy and integrate Vigilent's products to assist its customers in establishing and using mesh systems.  *See e.g.* **Exs. D through F**.  Based upon public information, Vigilent knew that its actions, including, but not limited to any of the aforementioned products and services, would induce, have induced, and will continue to induce infringement by its customers by continuing to sell, support, and instruct its customers on using the Accused Products and Services.

41.     Vigilent's aforesaid activities have been without authority and/or license from Plaintiff.

42.     Plaintiff is entitled to recover from Vigilent the damages sustained by Plaintiff as a result of Vigilent's wrongful acts in an amount subject to proof at trial, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35

U.S.C. § 284.

43.     Vigilent's infringement of Plaintiff's rights under the '019 Patent will continue to damage Plaintiff, causing irreparable harm to Plaintiff for which there is no adequate remedy at law, unless enjoined by this Court.

## JURY DEMAND

44.     Plaintiff demands a trial by jury on all issues.

## PRAYER FOR RELIEF

45.     Plaintiff respectfully requests the following relief:

    A.     An adjudication that one or more claims of the Patents-in-Suit has been infringed, either literally and/or under the doctrine of equivalents, by the Vigilent;

    B.     An adjudication that Vigilent has induced infringement of one or more claims of the Patents-in-Suit based upon post-filing date knowledge of the Patents-in-Suit;

    C.     An award of damages to be paid by Vigilent adequate to compensate Plaintiff for Vigilent's past infringement and any continuing or future infringement up until the date such judgment is entered, including interest, costs, and disbursements as justified under 35 U.S.C. § 284 and, if necessary to adequately compensate Plaintiff for Vigilent's infringement, an accounting of all infringing sales including, but not limited to, those sales not presented at trial;

    D.     A grant of permanent injunction pursuant to 35 U.S.C. § 283, enjoining the Vigilent and its respective officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them who receive

actual notice of the order by personal service or otherwise, from further acts of infringement with respect to any one or more of the claims of the Patents-in-Suit;

E.   That this Court declare this to be an exceptional case and award Plaintiff its reasonable attorneys' fees and costs in accordance with 35 U.S.C. § 285; and,

F.   Any further relief that this Court deems just and proper.

Dated: <u>June 19, 2019</u>                        Respectfully submitted,

                                          **STAMOULIS & WEINBLATT, LLC**

                                          <u>*/s/ Stamatios Stamoulis*</u>
                                          Stamatios Stamoulis (#4606)
                                          Richard C Weinblatt (#5080)
                                          800 N. West Street Third Floor
                                          Wilmington, Delaware 19801
                                          Telephone: (302) 999-1540
                                          Email: stamoulis@swdelaw.com
                                          Email: weinbaltt@swdelaw.com

                                          ***Attorneys for Plaintiff F2VS Technologies, LLC***

***Of Counsel***
James F. McDonough, III (Bar No. 117088, GA)
Jonathan R. Miller (Bar No. 507179, GA)
Travis E. Lynch (Bar No. 162373, GA)
**HENINGER GARRISON DAVIS, LLC**
3621Vinings Slope, Suite 4320
Atlanta, Georgia 30339
Telephone: (404) 996-0869, -0863, -0867
Facsimile: (205) 547-5502, -5506, -5515
Email: jmcdonough@hgdlawfirm.com
Email: jmiller@hgdlawfirm.com
Email: tlynch@hgdlawfirm.com